## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| MERLA LAWRENCE, *pro se* | : | Civil Action No. 11-3569 (ES) |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| EMIGRANT MORTGAGE COMPANY, | : |  |
| PRIME TIME MORTGAGE CORP., | : |  |
| RETAINED REALTY, INC., DARNELL | : |  |
| DAVIS, and KENNETH P. SAMSON | : |  |
|  | : |  |
| Defendants. | : |  |

SALAS, DISTRICT JUDGE

Pending before the Court is Defendants' Emigrant Mortgage Company ("Emigrant") and Retained Realty Inc.'s ("Retained Realty") motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), (D.E. 8), Kenneth Samson's motion to dismiss pursuant to 12(b)(6), (D.E. 10), and Prime Time Mortgage's ("PTM") motion to dismiss pursuant to 12(b)(6) and 12(b)(1). (D.E. 16). This Court has jurisdiction under 28 U.S.C. § 1331. The Court has considered the papers submitted in support of and in opposition to the instant motions and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motions are GRANTED in part and DENIED in part.

I.      BACKGROUND

A.      Parties and Claims

The underlying issue in this case is whether the Defendants have engaged in violations of federal statutory and state common law, the result of which allegedly caused Plaintiff Merla

Lawrence ("Plaintiff" or "Ms. Lawrence") to lose her home and suffer additional economic injuries.

Plaintiff is the former owner of a home in South Orange, New Jersey. Defendant Emigrant is a mortgage company, and Defendant Retained Realty is a buyer and seller of real estate, including foreclosed homes. Defendant Kenneth Samson is an attorney for Emigrant. Defendant Darnell Davis is a mortgage broker with PTM. (D.E. 1, Compl. ¶¶ 1-6, 12-13).

In her first count, Plaintiff, acting *pro se*, alleges that Defendants Emigrant, PTM, Mr. Davis, and Mr. Samson violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by failing to disclose to Plaintiff a "clear and conspicuous statement of the interest rate, the monthly payment amount and default penalties under [her] Loan." (*Id.* ¶ 65). She claims that she did not see any of the loan documents until May 2010, and that the documents contain different interest rates. (*Id.*) She also was not told she had a right to decline the loan agreement and that her home would be foreclosed on in case of default, which according to Plaintiff, is a violation of TILA. (*See id.* ¶¶ 60-69).

In her second count, Plaintiff alleges that the same Defendants violated § 1635 of TILA by failing to notify her of her right to rescind. (*Id.* ¶¶ 70-73).

In her third count, Plaintiff alleges that the same Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, by failing to make available for inspection a HUD-1 Settlement Statement, a disclosure form regarding mortgage loan transactions (including real estate settlement cost statements) that includes the disclosure requirements of RESPA and TILA, prior to closing.[1] (*Id.* ¶¶ 74-80).

In her fourth count, labeled an action for "predatory lending," Plaintiff alleges that the same Defendants intentionally "engaged in a pattern of fraudulent and abusive practices with

---

[1] 12 U.S.C.A. § 2603(a).

respect to the Loan" with the purpose of causing her to enter the loan agreement.  (*Id.* ¶ 81).  Plaintiff avers that Mr. Davis, through PTM, misrepresented the terms of the loan, led her to believe that Mr. Samson was her attorney, and approved a loan application "that [Plaintiff] never filled out and that contained fraudulent signatures and inconsistent information concerning interest rates."  (*Id.* ¶ 82).  Plaintiff reiterates that she was not provided with any of the federally mandated disclosures and relevant information on the loan terms.  (*Id.* ¶¶ 81-89).

In Plaintiff's fifth count, she alleges that Mr. Davis "steered" her into obtaining the loan so that he could borrow $10,000 from the proceeds of that loan, in violation of TILA, 15 U.S.C. § 1639(b).  (*Id.* ¶¶ 90-95).

In Plaintiff's sixth and final count, she alleges that Emigrant and Retained Realty were unjustly enriched by Emigrant's acquisition of Plaintiff's home by fraudulent means and the subsequent sale of that home to Retained Realty for one dollar.  (*Id.* ¶¶ 96-102).[2]

**B.      Factual and Procedural History**[3]

In 2005, Plaintiff Ms. Lawrence sought the assistance of Mr. Davis, a mortgage broker at PTM and family friend, so that she could refinance her then current mortgage loan.  (*See* Compl. ¶ 12).  Through Mr. Davis, Plaintiff secured a refinance loan from Emigrant.  The loan closing

---

[2] The Court does not address Plaintiff's sixth and final cause of action because none of the Defendants have moved to dismiss the claim.  (*Id.* ¶¶ 96-102).  The Court notes, however, that unjust enrichment has two elements: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable."  *Wanaque Borough Sewerage Auth. v. W. Milford*, 144 N.J. 564, 575 (1996) (citations omitted).

[3] Because Plaintiff does not address this case's procedural history in state court, the Court supplements the procedural history by drawing from an opinion written by the Honorable Kenneth Levy, P.J. Ch., on March 15, 2011 ("Judge Levy Op.").  (Judge Levy Op. at 1-3).  In that opinion, Judge Levy denied a motion for reconsideration filed by Ms. Lawrence challenging the court's granting of a foreclosure action on Lawrence's home.  Judge Levy's opinion is discussed more fully below.  Ms. Lawrence did not attach Judge Levy's opinion to her Complaint. However, this Court may consider Judge Levy's opinion in deciding a 12(b)(6) motion because Judge Levy's opinion is a matter of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (citation omitted).

took place on December 27, 2005, at which time Plaintiff executed a promissory note to Emigrant in the amount of $250,000. The loan was secured by a mortgage in favor of Emigrant on Plaintiff's property in South Orange. Present at that closing were Mr. Davis and Mr. Samson, the attorney for Emigrant. (Judge Levy Op. at 2; Compl. ¶ 23).

Plaintiff defaulted on the loan on or about September 1, 2007. (Judge Levy Op. at 2). Thereafter, Emigrant filed a foreclosure complaint on January 14, 2008 in the Chancery Court in New Jersey. (*Id.*). Plaintiff did not respond to the complaint and default was entered on April 15, 2008.[4] Final judgment and a writ of execution were entered on September 22, 2008. (*Id.*) On July 14, 2009, a sheriff's sale took place in which Emigrant was the successful bidder. (*Id.*).

On July 8, 2009, Ms. Lawrence, acting *pro se*, filed a motion to vacate the judgment of the court in the foreclosure action. (*Id.*). She advanced three grounds: (1) that she was never served with process; (2) that Emigrant failed to produce the original note; and (3) that she was the victim of fraud. (*Id.*). On August 7, 2009, the Court heard oral argument and denied the motion. (*Id.* at 3).

Ms. Lawrence then filed a second motion on October 28, 2009, seeking to vacate the sheriff's sale. (*Id.*). That motion was denied following oral argument. (*Id.*). On April 12, 2010, the court entered an order extending Ms. Lawrence's time to exercise her right of redemption, finding that she did not have actual knowledge of the date of the sale. (*Id.*). A plenary hearing at which she could establish her ability to redeem the property was scheduled for May 14, 2010. (*Id.*). However, that hearing was cancelled once Ms. Lawrence's attorney, Paul DiGiacomo, notified the court that Ms. Lawrence would not be presenting redemption proofs at the hearing.

---

[4] According to her Complaint, Ms. Lawrence had consulted with and/or was represented by several attorneys since 2007, including Jeffrey Dollinger, (Compl. ¶ 44), Paul DiGiacomo, (*id.* ¶ 48), and Lawrence Khalish. (*Id.* ¶ 49). She also sought and received substantial assistance from Marilynn English, a mortgage banker who, as far as the court can tell, is not an attorney. (*Id.* ¶¶ 44-48; *see also* Judge Levy Op. at 7) (discussing correspondences among Mr. DiGiacomo, Mr. Khalish, and Mr. Dollinger).

(*Id.*).

On April 29, 2010, Ms. Lawrence, again acting *pro se* but having an attorney, filed her last motion in the Chancery Court seeking to vacate the court's final judgment and the sheriff's sale. (*Id.*). According to her attorney, Mr. DiGiacomo, who filed a supplemental letter of clarification, Ms. Lawrence was seeking relief on the grounds that she "recently received documentation relating to the origination and closing of defendant's loan" giving rise to valid defenses and possible counterclaims in the foreclosure action. (*Id.*). Relying only on NJ Court Rule 4:50-1(f), she argued that she was the victim of "questionable practices" involving Mr. Samson, Mr. Davis, and Emigrant, at the time of her loan closing in December 2005. (*Id.*). Judge Levy, treating it as a motion for reconsideration, described the allegations as "fraudulent conduct and predatory lending." (*Id.*). Ms. Lawrence also contended that Emigrant violated TILA, thereby granting her a right of rescission. (*Id.* at 3-4).

Judge Levy denied the motion. (*Id.* at 6). First, the court found that, despite Ms. Lawrence's assertion that her requests for these loan documents were repeatedly rebuffed over the years, Emigrant's counsel certified that Ms. Lawrence first requested copies of these documents on March 29, 2010. (*Id.*). Thus, she did not have a sufficient basis to support a reconsideration of the court's earlier decision. (*Id.*). Second, the court found that Ms. Lawrence failed "to demonstrate excusable neglect or a meritorious defense against [Emigrant's] right to foreclose." (*Id.* at 7). The court further held that Ms. Lawrence's § 1635 TILA claim was time-barred. (*Id.* at 8-9). On June 17, 2011, Ms. Lawrence filed the subject Complaint in this Court.

## II. Arguments

### A.    Defendants

Emigrant argues that *Rooker-Feldman*, res judicata and the entire controversy doctrine

bar this Court's consideration of Counts One, Three, and Four.  (Emigrant and Retained Realty Moving Br. at 14-19).  Alternatively, Emigrant argues the statute of limitations has expired on Counts One, Two, and Three.  (*Id.* at 23-26).

PTM argues that the statute of limitations has expired on Counts One and Two.  Alternatively, PTM contends that it is not subject to the requirements imposed by the TILA sections mentioned in Count One.  (PTM Moving Br. at 4-6).  Further, PTM argues that res judicata and issue preclusion bar this Court's consideration of Counts Two and Four.  (*Id.* at 7-8, 10-12).  As to Count Three, PTM argues that the specific section of RESPA under which Plaintiffs sues does not create a private cause of action.  (*Id.* at 9-10).  PTM argues that Count Four should be barred because, assuming it is a fraud claim, Plaintiff cannot satisfy the elements of fraud.  (*Id.* at 10-12).

Mr. Samson argues that the statute of limitations has expired on Counts One, Two, and Three.  (Samson Moving Br. at 10-12).  Alternatively, Mr. Samson asserts that Count Three must be dismissed because the specific section of RESPA, which Plaintiff sues under, does not create a private cause of action.  (*Id.* at 12).  Finally, Mr. Samson contends Count Four must be dismissed because, assuming Plaintiff is pleading fraud in this claim, she has failed to meet the heightened pleading standard for fraud imposed by Rule 9(b), and also failed to meet the elements of fraud under Rule 12(b)(6).  (*Id.* at 13-16).

### B.     Plaintiff

Plaintiff has filed a Complaint, three opposition briefs, and one additional brief in which she introduces new facts that were not included in her Complaint or three opposition briefs.  (*See generally* Pl. Opp. Br. re: Samson, D.E. 13; Pl. Opp. Br. re: Emigrant and Retained Realty, D.E. 17; Pl. Opp. Br. re: PTM, D.E. 20; Pl. Sur-Reply Br. re: Samson, D.E. 20-1).  In her recitation of

facts, Plaintiff makes the following legal arguments.  Generally, Plaintiff argues that she pursued her rights diligently and that extraordinary circumstances beyond her control prevented her from timely filing, (*see, e.g.*, Pl. Opp. Br. re: Samson at 8-9); that Defendants failed to provide Plaintiff with federally mandated disclosures and documents prior to the loan closing in December 2005, (*see, e.g.*, Pl. Opp. Br. re: PTM at 3-5); and that Defendants engaged in equity stripping, steering, and predatory lending.  (*Id.* at 1-3).  Below, the Court summarizes and addresses all of Plaintiff's arguments more specifically.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction: Rule 12(b)(1)

The standard of review for a motion to dismiss pursuant to Rule 12(b)(1) depends on whether the motion is based on a facial or factual challenge to subject matter jurisdiction.  *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  If the defendant's attack is facial—*i.e.*, if it asserts that the court lacks jurisdiction over a plaintiff's claim on its face—a court must accept all allegations in the complaint as true and draw reasonable inferences in favor of the plaintiff.  *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Furthermore, a court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Abuhouran v. Fletcher Allen Healthcare*, No. 07-5108, 2009 WL 1834316, at *3 (D.N.J. June 25, 2009) (citation omitted).

By contrast, a factual challenge attacks the very power of the District Court to hear the case.  *See Mortenson*, 549 F.2d at 891.  When considering a factual challenge, a court does not attach a presumption of truthfulness to a plaintiff's allegations.  *Id.*  Accordingly, "'conflicting written and oral evidence may be considered and a court may decide for itself the factual issues

which determine jurisdiction.'" *Hoffman-La Roche Inc. v. Teva Pharm. USA*, No. 09-5283, 2011 WL 6028583, at *1 (D.N.J. Dec. 2, 2011) (citation omitted); *Martinez v. U.S. Post Office*, 875 F. Supp. 1067, 1070 (D.N.J. Jan. 23, 1995) (citation omitted). Nonetheless, "[w]here an attack on jurisdiction implicates the merits of plaintiff's federal cause of action, the district court's role in judging the facts may be more limited." *Id.* at 1071 (citation omitted). Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of proving jurisdiction. *Mortensen*, 549 F.2d at 891; *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 2000).

**B.      Motion to Dismiss for Failure to State a Claim: Rule 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. Dec. 6, 2010) (holding that contradictory factual assertions on the part of defendants must be ignored). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). But, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations." *McCargo v. Hall*, No. 11-553, 2011 WL 6725613, at *1 (D.N.J. Dec. 20, 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not

do." *Iqbal*, 129 S. Ct. at 1949 (citations omitted).   Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   DISCUSSION

### A.   *Rooker-Feldman*

Below, the Court finds that Count Two against Emigrant and Count Four against Emigrant, Mr. Davis, and Mr. Samson are barred by the *Rooker-Feldman* doctrine because raising the claims in this Court amounts to an appeal from an adverse state determination.

#### 1.   Count Two Against Emigrant

In Count Two, Plaintiff alleges that Emigrant violated § 1635 by failing to inform Plaintiff of her "right to rescind."  (Compl. ¶¶ 70).

This Court's reconsideration of the § 1635 rescission claim raised in the Chancery Court against Emigrant before Judge Levy is barred by the *Rooker-Feldman* doctrine because the relief that Plaintiff seeks here—rescission under § 1635—is the same relief Plaintiff sought in the Chancery Court.  Granting Plaintiff's requested relief would require this Court to overturn Judge Levy's decision.  Emigrant generally argues, under *Rooker-Feldman*, that the facts Plaintiff alleges in her Complaint here—the facts surrounding the December 2005 loan closing—are the same as the facts she alleged in her Chancery Court filings.  (*See* Emigrant and Retained Realty Moving Br. at 16-17).[5]  Having reviewed Plaintiff's Opposition Brief in its entirety, there is

---

[5] Notably, Emigrant does not raise dismissal arguments as to Count Two under *Rooker-Feldman*, but does raise them as to Counts One, Three, and Four. (*See* Emigrant and Retained Realty Moving Br. at 14-17).  However, because the application of *Rooker-Feldman* strips a district court of subject matter jurisdiction over the claims, the Court raises the issue of subject matter jurisdiction as to the § 1635 claim against Emigrant *sua sponte*.  *See In re Madera*, 586 F.3d 228, 230, 232 (3d Cir. 2009) (affirming *sua sponte* dismissal of rescission claims under TILA for lack of subject matter jurisdiction where the federal claim was "inextricably intertwined" with the state court

nothing the Court can construe as countering Emigrant's *Rooker-Feldman* arguments. (*See generally* Pl. Opp. Br. re: Emigrant and Retained Realty, D.E. 17).

The *Rooker-Feldman* doctrine prohibits lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Appellate jurisdiction over state-court judgments "rests solely with the United States Supreme Court." *Id.* (citation omitted). *Rooker-Feldman* encompasses the final decisions of lower state courts as well. *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997). The doctrine is implicated when "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). A claim is barred by the *Rooker-Feldman* doctrine in either of two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action" or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (quotation and citation omitted). "[A] federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d at 232 (quoting *In re Knapper*, 407 F.3d at 581).

Here, Count Two fails for both reasons: first, Plaintiff raised this § 1635 claim, and lost, in state court, and second Count Two is inextricably intertwined with the state court adjudication

---

decision because "a favorable decision for the Maderas in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage").

because permitting Plaintiff's claim to prevail would require the state court to negate foreclosure. More specifically, in Chancery Court, Plaintiff raised a § 1635 rescission claim, which is the same relief she seeks in this action.  (*Compare* Judge Levy Op. at 8 ("[D]efendant claims a right of rescission of the loan transaction under 15 U.S.C. § 1635."),[6] *with* Compl. ¶¶ 70-80 ("[U]nder 15 U.S.C. § 1635 I am entitled to a rescission of the Loan agreement . . . ."))  Plaintiff brought a claim under § 1635 against Emigrant in New Jersey's Chancery Court before the Honorable Kenneth Levy, P.J. Ch.[7]  In that matter, Emigrant, who was the only party, filed to foreclose on Ms. Lawrence's home due to her failure to make loan payments.  (Judge Levy Op. at 2).  Ms. Lawrence (as the defendant), while represented by counsel,[8] asked the Chancery Court in an April 29, 2010 motion to vacate its earlier decision allowing foreclosure, based partly on alleged § 1635 TILA violations by Emigrant.[9]  (Judge Levy Op. at 8).  Specifically, she alleged that "payments to the mortgage broker were 'not included in the finance charge'" as required under § 1635(i)(A), and that there was a potential error with respect to the Notice of Right to Rescission under § 1635(i)(B).  (*Id.* at 8 n.4).  Ms. Lawrence made this argument through Marilynn English, a mortgage banker, (Lawrence Mot. DE 10-1 at 18 of 36), and, more

---

[6] The Court may consider public records in evaluating a factual challenge to subject matter jurisdiction under 12(b)(1).  *See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007) ("If this is a factual attack, however, it is permissible for a court to review evidence outside the pleadings.").

[7] Ms. Lawrence also raised claims under RESPA, TILA, and HOEPA generally in her June 29, 2009 motion before the Chancery Court.  She did not cite to any specific section in any of those statutes.  (*See* Lawrence Mot. DE 10-1 at 18 of 36).  Ms. Lawrence also requested the following in that motion: the Settlement Statement, the right to cancel/rescind form, HUD-1 statement, TILA disclosures, and RESPA disclosures.  (*Id.* at 15-16 of 36).

[8] It appears that Plaintiff was represented by counsel before, during, and for some time after she filed the April 29, 2010 motion, but that she filed the motion before Judge Levy without counsel's assistance.  However, Judge Levy gave counsel permission to clarify or supplement Ms. Lawrence's motion, and by letter dated May 20, 2010, counsel did so.  (*See* Exhibit Q, attached to Certification of Robert Zeller, D.E. 8-3 at 163).  Further, Plaintiff relied on a sworn statement by Marilynn English, a mortgage banker at English Financial LLC, discussing inconsistencies in the TILA forms and a potential violation of RESPA.  (*See* Lawrence Mot. D.E. 10-1 at 18 of 36).

[9] Ms. Lawrence received copies of the HUD-1, Good Faith Estimate, 1003, and TILA forms before April 29, 2010.  (*See* Lawrence Mot., D.E. 10-1 at 32 of 36).

11

specifically and effectively, through a supplemental letter from her attorney, Paul Giacomo.  (*See* Exhibit Q, attached to Certification of Robert Zeller, D.E. 8-3 at 163).

In his March 15, 2011 opinion denying that motion, Judge Levy addressed Plaintiff's arguments as to the alleged TILA violation, explaining that although Ms. Lawrence's refinance loan transaction was susceptible to the provisions of TILA, her right to rescind under TILA had long expired.[10]  (Judge Levy Op. at 8).  The right expired three years after consummation of the loan transaction or upon sale of the secured property, whichever was earlier, "notwithstanding the fact that the information and forms required under [§ 1635] or any other disclosures required under this part have not been delivered to the obligor."  (*Id.*).  Judge Levy quoted the United States Supreme Court in explaining that "[t]he Act gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the 3-year period." (*Id.* at 8-9 (quoting *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 413 (1998)).  Judge Levy found that Ms. Lawrence's loan closing date was on December 27, 2005 and therefore her right of rescission expired on or about December 27, 2008—more than one year before she first raised the TILA claim.[11]  (*Id.* at 8-9).  Plaintiff litigated her § 1635 TILA claim against Emigrant, and lost, in state court before Judge Levy, and therefore Plaintiff's § 1635 TILA claim against Emigrant in this Court is barred under *Rooker-Feldman* under the first prong of *FOCUS*.  *See* 75 F.3d at 840 (holding that a claim is barred "if the federal claim was actually litigated in state court prior to the filing of the federal action").

---

[10] It is unclear whether oral argument was held on the reconsideration motion before Judge Levy.  His opinion does not mention any argument on that motion.

[11] Judge Levy's determination of the TILA issue in state court was based on his reliance on the statute of limitations. Such a determination in the federal courts constitutes a holding that Plaintiff has failed to state a claim.  *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Additionally, Count Two against Emigrant fails under the second prong of *FOCUS* because Plaintiff is a state-court loser whose injuries (and the relief she is seeking) are inextricably intertwined with the Chancery Court's decision permitting foreclosure. *See id.* (holding that a claim is barred "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong"). Although Plaintiff does not expressly ask this Court to overrule, review, or set aside Judge Levy's determination of the TILA claim, undoing the state court foreclosure is exactly what would have to happen for Plaintiff to obtain the relief she is seeking: rescission of her loan and return of her home.[12] Specifically, the Court would have to find that Judge Levy was incorrect as to whether the statute of limitations barred Plaintiff's § 1635 claim. The Court notes that Ms. Lawrence's basis for relief in Chancery Court was slightly different than what it is in this Court. In Chancery Court, Ms. Lawrence argued that she was entitled to rescission because glaring inconsistencies existed in the rescission forms. (Judge Levy Op. at 8 n.4). Here, she argues that she is entitled to rescission because she was never given rescission forms. (Compl. ¶¶ 74-80). *Rooker-Feldman* bars this Court from analyzing the § 1635 claim asserted here because, although the basis for § 1635 claim raised in Chancery Court was different from the basis provided here, the relief she seeks—rescission—is still sought under § 1635. Thus, this Court's decision to grant the relief would still require "reversing" or "overruling" Judge Levy's decision that the request for rescission is out of time. Such a review might be proper in New Jersey's appellate courts,[13] but it is not proper here. *See Forchion v. New Jersey*, No. 06-623,

---

[12] The Court notes that, in her Opposition Brief to PTM's motion to dismiss, Plaintiff argues that Judge Levy was "wrong in his ruling" because of his reliance on a 1995 case rather than a 2010 Sixth Circuit case to which Plaintiff cites. (*See* Pl. Opp. Br. re: PTM at 6). Although this Court is unable to find, in Judge Levy's opinion, the 1995 case that Plaintiff references, Plaintiff's statement that Judge Levy was "wrong" evidences Plaintiff's intention for this Court to review Judge Levy's ruling.

2007 WL 2248112, at *2 (D.N.J. Aug. 1, 2007); *Sutton v. Sutton*, 71 F. Supp. 2d 383, 392 (D.N.J. 1999).  Therefore, Count Two against Emigrant is barred by both prongs of *Rooker-Feldman*.  Count Two against Emigrant is dismissed without prejudice.

### 2.   Count Four Against Emigrant, Mr. Davis, and Mr. Samson

Count Four is labeled a "predatory lending" claim against Emigrant, Mr. Davis, and Mr. Samson.  (*See* Compl. ¶¶ 81-89).  However, a reading of the facts Plaintiff uses to support her claim indicates that she may instead be asserting a claim for fraud.  (*Id.*).  Regardless of which cause of action properly fits the language, Count Four must be dismissed.  If the claim sounds in fraud, then it is barred by *Rooker-Feldman* against Emigrant, Mr. Davis and Mr. Samson because Plaintiff raised the question of whether Mr. Davis, Mr. Samson, or Emigrant committed fraud in the Chancery Court.

Emigrant argues that *Rooker-Feldman* bars this Court's consideration of Count Four because Plaintiff's state court motions to vacate "state the same factual allegations and legal claims against Emigrant as are set forth in her Complaint in this case."  (Emigrant and Retained Realty Moving Br. at 17).  The trial court's decisions were rendered prior to the filing of this Complaint and Plaintiff is now asking this Court to review and reject those decisions.  (*Id.*).  Accordingly, the Court does not have subject matter jurisdiction over Count Four and the claim must be dismissed.  (*Id.* at 18).[14]

Assuming Plaintiff is alleging fraud, *Rooker-Feldman* would bar this Court's

---

[13] According to counsel for Emigrant, it appears that the matter from the Chancery Court was on appeal as of September 27, 2010.  (*See* Emigrant and Retained Realty Reply Br., D.E. 22 at 1).

[14] Notably, Mr. Samson does not raise dismissal arguments as to Count Four under *Rooker-Feldman*.  Additionally, Mr. Davis has not filed any moving papers whatsoever.  However, because the application of *Rooker-Feldman* strips a district court of subject matter jurisdiction over the claims, the Court raises the issue of subject matter jurisdiction as to the fraud allegation in Count Four against Mr. Samson and Mr. Davis *sua sponte*.  *See In re Madera*, 586 F.3d 228, 230, 232 (3d Cir. 2009).

determination of the fraud claim because Plaintiff raised the question of whether Mr. Davis, Mr. Samson, or Emigrant committed fraud in the Chancery Court. (Judge Levy Op. at 3, 7-8). Indeed, Judge Levy discussed the relevance of the allegations of "fraudulent practices" to the relief Ms. Lawrence was seeking in that court. (*Id.* at 8 ("First, the alleged fraud or wrongdoing by Darnell Davis and/or attorney Kenneth Samson has no bearing on [Emigrant's] right to foreclose. Even assuming the occurrence of such fraud, defendant has not produced any evidence establishing that plaintiff has any involvement in or knowledge of their conduct.")); (Lawrence Mot. DE 10-1 at 20-21 of 36 (alleging that Mr. Davis "scammed" her by borrowing money from her and not making the needed mortgage payments he promised he would)). Here, deciding that Defendants committed fraud and granting the relief sought—rescission of the loan and return of her home, (Compl. ¶ 89)—would require this Court to find that, contrary to Judge Levy's finding, (Judge Levy Op. at 8), Mr. Samson's, as well as Mr. Davis's conduct *did* amount to fraud and *did* affect Emigrant's right to foreclose on Ms. Lawrence's home. In other words, this Court would be required to "determine that the state court judgment was erroneously entered" and therefore "take action that would render that judgment ineffectual." *FOCUS*, 75 F.3d at 840. Such a review is better left to the state appellate courts. *See Sutton*, 71 F. Supp. 2d at 392; *Forchion*, 2007 WL 2248112, at *2. To that end, this Court's review of the fraud claim is barred by the *Rooker-Feldman* doctrine. Consequently, Count Four against Emigrant, Mr. Davis, and Mr. Samson is dismissed without prejudice.

### B.  No Private Cause of Action Under RESPA

Below, the Court dismisses Count Three against Mr. Samson and PTM because § 2603 does not create a private cause of action and therefore Plaintiff cannot maintain any claims under this section against Mr. Samson or PTM.

### 1.    Count Three Against Mr. Samson and PTM

In her third count, Plaintiff alleges that all four defendants violated RESPA, 12 U.S.C. § 2601, by failing to make the United States Department of Housing and Urban Development's ("HUD") Settlement Statement form available for inspection prior to the loan closing.  As Plaintiff correctly points out, the "Settlement Statement from the United States Department of Housing and Urban Development"—or HUD-1 Settlement Statement—to which she refers, is discussed at § 2603(b):

> The forms prescribed under this section shall be completed and made available for inspection by the borrower at or before settlement by the person conducting the settlement. . . . Upon the request of the borrower to inspect the forms prescribed under this section during the business day immediately preceding the day of settlement, the person who will conduct the settlement shall permit the borrower to inspect those items which are known to such person during such preceding day.

Mr. Samson and PTM seek dismissal of Count Three arguing, *inter alia*, that § 2603 does not create a private cause of action and therefore Plaintiff cannot maintain any claims under this section.  (*See* Samson Mov. Br. at 12-13; PTM Moving Br. at 9-10).  Based on its review of Plaintiff's Opposition Briefs, the Court could not find any argument to effectively counter PTM and Mr. Samson's objections.

Even if this Court were to find that Mr. Samson and PTM violated § 2603(b), the Court finds that RESPA does not create a private right of action for a violation of § 2603.  The Court bases this finding on the weight of authority of courts from around the country to have addressed the issue.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010) ("No express cause of action was created by Congress under RESPA Section [2603].");  *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997) (determining that related § 2604(c) does not expressly or implicitly provide for a private cause of action where (1) the older version of the section had expressly provided for such a right but the new one did not and (2) other

provisions of RESPA—§§ 2605(f), 2607(d)(2), (5), 2608(b)—still explicitly provide private civil remedies); *Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995) (same analysis and determination as to § 2609); *Hocker v. CitiMortgage, Inc.*, No. 09-973, 2012 WL 174967, at *4 (M.D. Pa. Jan. 20, 2012); *Dusich v. Seeley*, No. 10-1239, 2010 WL 4384249, at *4 (M.D. Pa. Oct. 29, 2010); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-0843, 2010 WL 3769091, *5 (E.D. Pa. Sept. 27, 2010); *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010) ("[T]here is no private right of action for violations of Section 2603's disclosure requirements.  Further, the disclosure provisions of RESPA that do confer a private right of action do not pertain to disclosures at a loan's closing.") (citations omitted); *Allan v. GreenPoint Mortg. Funding*, 730 F. Supp. 2d 1071, 1076 (N.D. Cal. 2010) (stating the § 2603 does not provide for a private right of action); *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1133 (E.D. Cal. 2010) (same); *Nelson v. JPMorgan Chase Bank, N.A.*, 707 F. Supp. 2d 309, 317 (E.D.N.Y. 2009) (citing to federal and state court decisions across the United States acknowledging that RESPA does not provide for a private cause of action for violations under several sections, including 2603); *Morrison v. Brookstone Mortg. Co., Inc.*, 415 F. Supp. 2d 801, 806 (S.D. Ohio 2005) (finding no express or implicit private right to cause of action for violations of section 2603); *In re Salvador*, 456 B.R. 610, 622 (Bankr. M.D. Ga. 2011) ("Likewise, section 2603 does not explicitly provide for private civil remedies.  Further, section 2614 does not mention actions under section 2603.  This leads to the conclusion that Congress did not intend to provide a private case of action for violations of section 2603.").  Plaintiff has not cited—and the Court is unaware of—any decisions to the contrary that have been issued by state or federal courts.

Here, Plaintiff attempts to bring a private cause of action under § 2603.  For example, in

her Complaint, she states that, in violation of § 2603 of RESPA, she never inspected the HUD-1 document prior to the loan closing and does not recall ever receiving it.  (Compl. ¶¶ 74-78).  She states that the "Defendants' violation of 12 U.S.C. § 2603 caused [her] to enter into a loan for which [she] did not know the required information."  (*Id.* ¶ 79).  Ms. Lawrence then lost her home because she defaulted on the loan.  As a result, her "loan should be cancelled and [her] original loan reinstated.  In addition, all amounts [Plaintiff] paid to Emigrant should be returned to [her]."  (*Id.* ¶ 80).  In her opposition brief to Mr. Samson's motion to dismiss, she argues that "[b]ased on Plaintiff's expert's interpretation of the law, and due to the violations of [RESPA] . . . Plaintiff's mortgage with Emigrant should be removed and Plaintiff should be made whole by returning to her initial 15 year mortgage."  (*See* Pl. Opp. Br. re: Samson at 9).

Because Plaintiff attempts to bring a private cause of action under § 2603, and RESPA does not create a private cause of action for a person "conducting the settlement's" failure to meet the requirements set forth in § 2603, Count Three against PTM and Mr. Samson under RESPA is dismissed.[15]  The Court dismisses her claim without prejudice, however, because the Third Circuit and the District of New Jersey have not yet spoken to this issue.

## C.    Statute of Limitations

Below, the Court dismisses the following claims because they were brought in this Court after expiration of the statute of limitations and are therefore time-barred: Count One against PTM and Mr. Samson; Count Two against PTM and Mr. Samson; Count Three against Emigrant.

Emigrant argues that the statute of limitations has expired on Count Three.  (Emigrant

---

[15] In *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009), the Third Circuit stated that "RESPA only authorizes suits by individuals who receive a loan accompanied by a kickback or unlawful referral."  *Id.* at 763.  Even if the Court were to assume that § 2603 allowed for a private cause of action, Plaintiff has not presented any facts that would support an allegation that Ms. Lawrence received a loan accompanied by a kickback or unlawful referral.

and Retained Realty Moving Br. at 23-26).  PTM argues that the statute of limitations has expired on Count One and Two.  (PTM Moving Br. at 4-6).  Mr. Samson argues that the statute of limitations has expired on Counts One and Two.  (Samson Moving Br. at 9-11).

Plaintiff argues that the statute of limitations imposed by the various acts and sections should be equitably tolled.  (Pl. Opp. Br. re: Samson at 8; Pl. Opp. Br. re: PTM at 3).[16]  Plaintiff argues that she has attempted for three years to obtain copies of the documents from her mortgage application and closing without success, and therefore could not file any Federal complaints or lawsuits previously as she did not know the contents of those documents and was unaware of any federal violations until she received those documents and had a mortgage expert or real estate attorney review them.  (*Id.*).  Further, she states in her Sur-Reply Brief that it was not until 2007 that she was told that she was required by law to have copies of all those documents.  (*See* Pl. Sur-Reply Br. re: Samson, D.E. 20-1 at 5; *also* Pl. Opp. Br. re: PTM at 3).

Violation of the statute of limitations is grounds for dismissal under Rule 12(b)(6). *McPherson v. U.S.*, 392 F. App'x. 938, 943 (3d Cir. 2010).

### 1.    Count One Against PTM and Mr. Samson

PTM and Mr. Samson argue that the statute of limitations has expired on Count One. (PTM Moving Br. at 4; Samson Moving Br. at 9-11).  Specifically, they argue that 15 U.S.C. § 1640(e) provides a one year statute of limitations for the making of such claims.  Because the alleged failure to provide documents occurred in December 2005, she had until December 2006 to bring a violation of TILA claim.  They contend that she did not bring the claim within that time, and Count One is now time-barred.  (PTM Moving Br. at 4; Samson Moving Br. at 9-11). Further, Mr. Samson argues that there is no valid argument for equitable tolling here.  (*Id.* at 10).

---

[16] Plaintiff does not direct her argument for equitable tolling to any specific objection raised by Mr. Samson.  The Court assumes that Plaintiff intends to use her argument for equitable tolling for all of the claims Mr. Samson moves to dismiss based upon the expiration of the applicable statute of limitations.

Plaintiff does not allege that Mr. Samson misled her or prevented her from bringing her claim. (*Id.*). Plaintiff has failed to prove that "she exercised reasonable diligence in investigating and bringing her claims." (*Id.*).

TILA provides that "[a]ny action under [§ 1640(e)] may be brought in any United States district court . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Here, Plaintiff alleges in Count One that "[i]n connection with the loan, [PTM and Mr. Samson] did not provide to me any of the disclosures required by 15 U.S.C. §§ 1631, 1632 [and] 1639." (Compl. ¶ 64). Because the loan closing occurred on December 27, 2005 (*id.* ¶ 22), she had until December 27, 2006 to file claims for violations of TILA. *See* 15 U.S.C. § 1640(e). Plaintiff brought this claim in the District Court on June 17, 2011, more than four years after the statute of limitations expired under the above mentioned TILA sections referenced above. Plaintiff has not timely filed Count One. Accordingly, Plaintiff's Count One is now time-barred. Consequently, Count One of Plaintiff's Complaint is dismissed.

The Court finds Plaintiff's argument for equitable tolling unavailing. (*See* Pl. Opp. Br. re: Samson at 8; Pl. Sur-Reply Br. re: Samson, D.E. 20-1 at 5; Pl. Opp. Br. re: PTM at 3). The Third Circuit allows for equitable tolling of statutes of limitations where "the plaintiff in some extraordinary way has been prevented from asserting his or her rights." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). Thus, Plaintiff must demonstrate that she was prevented from asserting her rights "in some extraordinary way." Mere excusable neglect is insufficient. *Miller v. N.J. State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir.1998); *Sanchez v. Phelps*, 621 F. Supp. 2d 183, 186-87 (D. Del. 2009) (citation omitted) (denying a pro se prisoner's habeas petition on the basis of statute of limitations alone and stating that "a pro se petitioner's lack of legal knowledge, or a mistake resulting from the absence of

such knowledge, does not constitute an extraordinary circumstance for equitable tolling purposes."). It goes without saying that "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to [Plaintiff], but how severe an obstacle it creates with respect to meeting the [statute of limitations]." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).

To support her argument for equitable tolling, Plaintiff argues that she has attempted for three years to obtain copies of the documents from her mortgage application and closing without success, and therefore could not file any Federal complaints or lawsuits previously as she did not know the contents of those documents and was unaware of any federal violations until she received those documents and had a mortgage expert or real estate attorney. (*See* Pl. Opp. Br. re: Samson at 8). Further, she states in her Sur-Reply Brief that it was not until 2007 that she was told that she was required by law to have copies of all those documents. (*See* D.E. 20-1 at 5; *also* Pl. Opp. Br. re: PTM at 3).

Plaintiff's explanation does not provide the type of extraordinary circumstances contemplated in *Oshiver* and *Miller* that would excuse her failure to meet the statute of limitations. Indeed, she acknowledges that she first learned that she was entitled to those documents in 2007. Plaintiff still waited for more than three years to assert her rights in this Court. Second, it is unclear why Ms. Lawrence would have needed to know the substance of the documents she was requesting in order to file a claim for failing to provide her with those documents. The substance of Plaintiff's claim is based on whether she was provided with the documents and not the content of the documents themselves.

Therefore, Count One against PTM and Mr. Samson is dismissed without prejudice.

### 2.    Count Two Against PTM and Mr. Samson

Mr. Samson and PTM argue that the statute of limitations has expired on Count Two. (Samson Moving Br. at 9-11; PTM Moving Br. at 6).  Specifically, 15 U.S.C. § 1640(e) provides a one-year statute of limitations for the making of a TILA § 1635 claim.  Because the alleged failure to provide documents occurred in December 2005, she had until December 2006 to bring a claim for violation of TILA.  She did not, and Count Two is now time-barred.  (Samson Moving Br. at 9-11; PTM Moving Br. at 6).  Further, Mr. Samson argues that there is no valid argument for equitable tolling here.  (Samson Moving Br. at 10).  Plaintiff does not allege that Mr. Samson misled her or prevented her from bringing her claim.  (*Id.*).  She has failed to prove that "she exercised reasonable diligence in investigating and bringing her claims."  (*Id.*).

Count Two for violation of TILA § 1635 against PTM and Mr. Samson is time-barred. As explained in the Court's Count One analysis, TILA imposes a one year statute of limitations period "from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Here, Plaintiff alleges, in Count Two, that she was not provided with the required "right to rescind" during the time of the loan closing as required under § 1635.  (Compl. ¶ 70).  Because the loan closing occurred on December 27, 2005, (*id.* ¶ 22), Plaintiff had until December 27, 2006 to file claims for violations of TILA.  *See* 15 U.S.C. § 1640(e).  Plaintiff brought this claim in the District Court on June 17, 2011, more than four years after the statute of limitations expired.  Therefore, Plaintiff has not filed within the time alotted, and thus Plaintiff's claim is now time-barred. Accordingly, Count Two against PTM and Mr. Samson is dismissed without prejudice.

Further, the Court finds Plaintiff's argument for equitable tolling as to Count Two, (*see* Pl. Opp. Br. re: Samson at 8; Pl. Sur-Reply Br. re: Samson, D.E. 20-1 at 5), unavailing for the same reasons as for Count One—Plaintiff waited more than three years to assert her rights in this

Court after learning of her rights to the TILA documents, and there is no reason to believe that Ms. Lawrence would have needed to know the content of these documents in order to file a claim for failure to provide the documents.  Finally, Plaintiff's reliance on *Robertson v. Simpson*, 624 F.3d 781 (6th Cir. 2010), is misplaced for three reasons.  (*See* Pl. Opp. Br. re: PTM at 6).  First, this Court is unable to find, in Judge Levy's opinion, the 1995 case that Plaintiff argues was not as persuasive as *Robertson*.  Second, the Sixth Circuit, though persuasive, is not binding on this District.  Third, and finally, the facts in *Robertson* were significantly different from the facts before this Court.  In that case, the Sixth Circuit remanded a matter to the district court "for a determination of whether [the habeas petitioner's attorney's] cocaine use and possible misadvice constitute[d] sufficient extraordinary circumstances to entitle Robertson to equitable tolling." *Robertson*, 624 F.3d at 786.  Here, Plaintiff does not allege that she was misdirected as to her potential claim or that the persons from whom she sought advice were incompetent.

Accordingly, Count Two against PTM and Mr. Samson is dismissed without prejudice.

### 1.    Count Three Against Emigrant

Emigrant argues that the statute of limitations has expired on Count Three.  (Emigrant and Retained Realty Moving Br. at 24-25).  Specifically, §§ 2605, 2607, and 2608 of RESPA— the only sections that create private causes of actions under RESPA—impose statutes of limitation of one or three years on claims brought under §§ 2605, 2607, and 2608.  (*Id.*).  Assuming that Plaintiff's RESPA claim falls under one of these three sections of RESPA, Count Three is time-barred because it was not brought within either one or three years of when the violation—failure to disclose documents prior to the loan closing—occurred.  (*Id.*).

The Court finds that Count Three against Emigrant for violation of RESPA is time-barred.  As explained earlier in this Opinion, § 2603 of RESPA does not appear to create a

private cause of action.  Section 2614 of RESPA, which governs "jurisdiction of courts" and "limitations," provides that

> [a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court . . . within 3 years in the case of a violation of section 2605 . . . and 1 year in the case of a violation of section 2607 or 2608 . . . from the date of the occurrence of the violation.

12 U.S.C. § 2614.  Assuming that Count Three could properly be brought under §§ 2605, 2607, or 2608, her claim is time-barred.  Plaintiff asserts that Emigrant failed to "make available for inspection by [her], prior to the closing of the loan, the Settlement Statement form," that she "did not ever inspect the document . . . prior to the closing of the loan," and that "[Emigrant's] violation of [RESPA] caused [her] to enter into a loan for which [she] did not know the required information."  (Compl. ¶¶ 77-79).  Because the loan closing and alleged failure to disclose the RESPA documents occurred in December 27, 2005, (*id.* ¶ 22) ("the date of the occurrence of the violation"), she had until December 27, 2006 to file a claim for violation of §§ 2607 or 2608, or until December 27, 2008 to file a claim for a violation of § 2605.  *See* 12 U.S.C. § 2614. Plaintiff brought her claim in the District Court on June 17, 2011, more than four years after the statute of limitations expired under §§ 2607 or 2608, and more than two years after the statute of limitations expired under § 2605.  Plaintiff failed to timely file her claim against Emigrant and is now time-barred from bringing Count Three against Emigrant.  Consequently, Count Three against Emigrant is hereby dismissed.

Further, the Court finds Plaintiff's argument for equitable tolling as to Count Three, (*see* Pl. Opp. Br. re: Samson at 8; Pl. Sur-Reply Br. re: Samson, D.E. 20-1 at 5), unavailing for the same reasons as for Count One—Plaintiff waited for more than three years to assert her rights in this Court after learning of her rights to the RESPA documents, and there is no reason to believe that Ms. Lawrence would have needed to know the content of these documents in order to file a

claim for failure to provide the documents.

Accordingly, Count Three against Emigrant is dismissed without prejudice.

## B.        Entire Controversy

Count One against Emigrant is barred by the entire controversy doctrine because the claim stems from facts and circumstances related to the December 2005 loan closing. Plaintiff's failure to allege additional violations of TILA against Emigrant in her action in the Chancery Court precludes her from doing so here.

Emigrant argues that Count One should be dismissed because it is barred by the entire controversy doctrine. (Emigrant and Retained Realty Moving Br. at 19-23).[17]

Based on its review of Plaintiff's Opposition Brief, the Court cannot find anything that would effectively counter Emigrant's entire controversy argument. *(See, generally*, Pl. Opp. Br. re: Emigrant).

The entire controversy doctrine is codified in New Jersey Court Rule 4:30A, which provides[18]:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

The fundamental principle behind the entire controversy doctrine is that "the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell by Cogdell v. Hosp. Ctr. at*

---

[17] Emigrant is the only party to raise dismissal arguments as to Count One under the entire controversy doctrine. (*See* Emigrant and Retained Realty Moving Br. at 14-17).

[18] The Third Circuit has held that a "federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (1997) (citations omitted).

*Orange*, 116 N.J. 7, 15 (1989).   The purposes of the doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.   *Id.*   "In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions."   *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995) (citations omitted).   If parties will have to engage in additional litigation in order to address the "rights and liabilities" that arise from a single or related series of transactions, then the omitted claims "must be regarded as constituting an element of one mandatory unit of litigation."   *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 590-91 (3d Cir. 1989) (citations omitted).

### 1.   Count One Against Emigrant

Emigrant argues that Count One should be dismissed because it is barred by the entire controversy doctrine.   (Emigrant and Retained Realty Moving Br. at 19-23).[19]   Specifically, Emigrant argues that the alleged failure to make disclosures as required by TILA arise from the same set of circumstances surrounding Plaintiff's loan closing in December 2005.   (*Id.*).   Thus Emigrant contends that, because "the parties in both cases are the same", "the claims in this case arise from the same facts as the state foreclosure suit", and Plaintiff knew of these facts and parties at the time of the foreclosure suit, she should have raised them as a germane counterclaim as a matter of right under Rule 4:64-5.   *Id.* at 19).   The allegations she makes here in Count One should have been raised against Emigrant in the Chancery Court action, but were not.   (*Id.* at 19-20).   To that end, Emigrant argues that the entire controversy doctrine bars this Court's

---

[19] Emigrant is the only party to raise dismissal arguments as to Count One under the entire controversy doctrine. (*See* Emigrant and Retained Realty Moving Br. at 14-17).

consideration of Count One.

All of Plaintiff's TILA allegations in Count One arise from the same set of circumstances surrounding Plaintiff's loan closing in December 2005, and the allegations should have been raised against Emigrant in the Chancery Court action.  In Count One of her Complaint, Plaintiff alleges that, at the time of the closing, she did not receive the necessary disclosures required under §§ 1631, 1632, and 1639 to be presented prior to the loan closing.  (Compl. ¶¶ 60-69).  Specifically, Plaintiff alleges that Emigrant did not provide her with a "clear and conspicuous statement of the interest rate, the monthly payment amount and default penalties under the loan," (*id.* ¶ 65), or inform her of her right to decline the loan and the consequences of default with regard to her home.  (*Id.* ¶¶ 66-69).  These disclosures were to be presented three days before the closing as required by law.  (*Id.* ¶ 68).  Plaintiff's allegations in Chancery Court relate to the same transaction or occurrence as the Count One allegations because her Chancery Court claims also focus on the lack of disclosure of accurate loan documents, and the lack of disclosing the consequences of not adhering to the terms.  For example, in the Chancery Court, Plaintiff alleged that the Notice of Right to Cancel the loan document—which Plaintiff obtained years after she was statutorily entitled to receive it—contained errors and inconsistent terms.  (*See* Judge Levy Op. at 8 n.4 (discussing alleged "defects in the required disclosure statements" and "potential error[s] with respect to the Notice of Right to Rescission"); Lawrence Mot. DE 10-1 at 35 of 36 (explaining how Marilynn English discussed errors and inconsistencies in the TILA documents); *id.* at 32 of 36 (discussing the receipt of TILA disclosure documents after repeated requests for copies of the documents)).  Therefore, the Count One allegations for not providing the required loan information—against Emigrant (who approved the loan, (*id.* ¶ 13))—is related to the same loan closing that led Plaintiff to sue in state court for failure to provide accurate loan

documentation.

Moreover, Plaintiff's knowledge of the existence of TILA at the time she claimed against Emigrant in her Chancery Court action, hits on the core purpose of the entire controversy doctrine: to adjudicate a legal controversy "in one litigation in only one court." *Cogdell*, 116 N.J. at 15.  In the Chancery Court action, Plaintiff only raised a TILA claim under § 1635 against Emigrant.  She did not raise TILA claims under any of the other TILA sections, despite the fact that TILA and the circumstances alleged—the loan closing in December 2005—were well known to her at the time of her April 2010 filing.  In short, Plaintiff was fully aware of her potential Defendant (Emigrant), the set of circumstances that connected Emigrant to the other Defendants, and that TILA existed, at the time she moved in Chancery Court on April 29, 2010. Hearing Plaintiff's Count One TILA claims against Emigrant now in this Court would unfairly affect Emigrant—a party who had a material interest in the judicial outcome of the legal controversy in the Chancery Court.  *See Cogdell* 116 N.J. at 23 (finding that the entire controversy doctrine mandates joinder of "all parties with a material interest" that can "affect or be affected by the judicial outcome of a legal controversy").

Furthermore, the Court finds that rendering a decision on the merits in this action would result in "piecemeal decisions," create unfairness to Emigrant whose material interest is in limbo during the pendency of a second litigation about the same transactions and occurrences, and would exemplify a duplication of judicial resources on the same matters.  *See id.*  Plaintiff failed to raise all of her TILA claims against Emigrant at the appropriate time in Chancery Court. Therefore, because the TILA claims against Emigrant arise "from related facts or the same transaction or series of transactions," and because "it is the core set of facts that provides the link between distinct claims against [Emigrant that] triggers the requirement that they be determined

in one proceeding," those claims must be dismissed here under the entire controversy doctrine. *DiTrolios*, 142 N.J. at 267-68 (citations omitted).

Therefore, Count One against Emigrant is dismissed without prejudice.

### C.    Remaining Claims of Fraud

As a threshold matter, the Court construes Count Four against PTM as a fraud claim because, although Plaintiff fashions the count as one sounding in "Predatory Lending," the specific allegations under that heading more closely track the elements of fraud than predatory lending.[20]  To the extent that it is a fraud claim, Count Four against PTM is dismissed because the facts alleged in Plaintiff's Complaint fail to satisfy the elements of common law fraud.[21]

PTM argues that Plaintiff's fraud claim should be dismissed because Plaintiff has failed to plead the elements of a fraud claim.  (PTM Moving Br. at 10-12).  The allegations contained in Plaintiff's Complaint only attributes one statement to Mr. Davis—the alleged misrepresentation as to the terms of the loan.  (*Id.* at 10-11).  In addition, Mr. Davis apparently led Plaintiff to believe that Mr. Samson was her attorney.  (*Id.* at 11).  As to the former allegation, PTM argues that Plaintiff has not met the second element of fraud—making the statement with knowledge of its falsity—or proven that Mr. Davis intended to deceive Plaintiff. (*Id.*).  As to the latter allegation, PTM contends that Plaintiff openly states elsewhere in the Complaint that "Davis did not tell [her] specifically that Samson was [her] attorney."  (*Id.*) (citation omitted).

---

[20] The Court notes that Plaintiff's claim is unlikely to be one for predatory lending, which requires the disclosure of certain information and notices within a reasonable time after signing a loan agreement.  *See* Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 (laying out the specific disclosures and notices).  The Court notes that there are other federal and state laws under which plaintiffs bring claims for predatory lending.  *See* Julia Patterson Forrester, *Still Mortgaging the American Dream: Predatory Lending, Preemption, and Federally Supported Lenders*, 74 U. Cin. L. Rev. 1303, 1316-22 (2006).

[21] The statute of limitations for a common law fraud action in New Jersey is six years from discovery of the alleged fraud.  *Westinghouse Elec. Corp. by Levit v. Franklin*, 993 F.2d 349, 352 (3d Cir 1993).

Based upon its review of Plaintiff's Opposition Brief, the Court cannot find any statement that would effectively counter PTM's substantive fraud argument.  *(See generally* Pl. Opp. Br. re: PTM).

The elements of fraud are: (1) a material misrepresentation by the defendant of a past or present fact; (2) the defendant's knowledge of the fact's falsity; (3) the defendant's intent that plaintiff rely on the statement; (4) reasonable reliance by plaintiff; and (5) resulting damages to plaintiff.  *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175 (2006).

While Plaintiff names PTM as a Defendant in Count Four, Plaintiff does not allege any facts against PTM.  (*See* Compl. ¶¶ 81-89).  Therefore the Court construes Plaintiff's fraud claim against PTM to be based on a theory of respondeat superior for the actions of PTM's employee, Mr. Davis.  As to Mr. Davis, Plaintiff claims that he (1) told her that the loan was closing and that she must go to Parsippany to "sign some papers and meet the attorney" (*id.* ¶ 22); (2) told her the monthly payment amount would be $2,000 (the actual amount was $2,357.23) (*id.* ¶¶ 28-29); and (3) led her to believe that Mr. Samson was her attorney when Mr. Davis allegedly introduced her to Mr. Samson and stated "this is my aunt, take good care of her."  (*Id.* ¶ 23).

The Court determines that none of the acts or statements alleged by Plaintiff rise to the level of constituting common law fraud.  The first statement—that Mr. Davis told her that the loan was closing and that she must go to Parsippany to "sign some papers and meet the attorney"—is reasonably susceptible to more than one meaning.  Plaintiff *assumed* Mr. Davis meant that Mr. Samson was her attorney, but there is no reason to believe that Mr. Davis intended for Plaintiff to believe Mr. Samson was her attorney.  Therefore, the statement fails to satisfy the third element of *Liberty*—defendant's intent that plaintiff rely on the statement. *Liberty,* 186 N.J. at 175.  Moreover, Mr. Davis could not have known of the statement's falsity

because the statement *was not* false: the loan was closing that day; she did have to go to Parsippany; and she was going to "sign some papers and meet the attorney." Therefore, the statement also fails to satisfy the first and second elements of *Liberty*—(1) a material misrepresentation by the defendant of a past or present fact and (2) the defendant's knowledge of the fact's falsity. *Liberty,* 186 N.J. at 175.

As to the second statement, Mr. Davis's estimation that Plaintiff would have to pay $2,000 does not appear to be an intentional material misrepresentation. The statement could be read as an estimation of amount. This reading is persuasive considering that the actual amount she had to pay was $2,357.23 (Compl. ¶¶ 29)—not significantly higher than the estimation. Therefore, the second statement fails to satisfy the first and second elements of *Liberty*—(1) a material misrepresentation by the defendant of a past or present fact and (2) the defendant's knowledge of the fact's falsity. *Liberty,* 186 N.J. at 175.

Finally, Plaintiff has failed to prove that Mr. Davis's statement—"this is my aunt, take good care of her," (*id.* ¶¶ 23)—was a material misrepresentation as to Mr. Samson's being her attorney or was made with knowledge of its falsity. Although Plaintiff claims that she relied on this alleged misrepresentation, she admits that she "assumed" that Mr. Davis's hospitable statement meant that he was introducing her to her attorney, Mr. Samson. (*Id.* ("Although Davis did not tell me specifically that Samson was my attorney . . . I assumed that Samson was my attorney.")). The Court cannot find any "material misrepresentation" in the statement "this is my aunt, take good care of her." Therefore, the third statement fails to satisfy the first and second elements of *Liberty*—(1) a material misrepresentation by the defendant of a past or present fact and (2) the defendant's knowledge of the fact's falsity. *Liberty,* 186 N.J. at 175.

Therefore, the Court dismisses Count Four of Plaintiff's Complaint, as it relates to PTM,

without prejudice.

## V.    CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are DENIED[22] in part and GRANTED[23] in part.

s/*Esther Salas*

**Esther Salas, U.S.D.J.**

---

[22] The following Counts are not dismissed because the parties have not moved to dismiss them: Count Six against Emigrant Mortgage Company and Retained Realty; and Counts One, Two, Three, and Five against Darnell Davis.

[23] The following Counts are dismissed without prejudice: Counts One, Two, Three, and Four against Emigrant Mortgage Company; Counts One, Two, Three, and Four against Kenneth Samson; Counts One, Two, Three, and Four against Prime Time Mortgage; and Count Four against Darnell Davis.